CHICKASAW COOPERAGE COMPANY *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY.

Opinion delivered December 1, 1919.

1. CARRIERS — BILL OF LADING — CAR ON SIDING — INTERSTATE COMMERCE ACT.—Where a carrier's bill of lading provided, that when goods are received for shipment on a private or other siding, such goods are at the owner's risk until the car is attached to a train, such bill of lading is not rendered invalid by the Cummins amendment to the Interstate Commerce Act.*

2. CARRIERS—BILL OF LADING—DELIVERY ON PRIVATE OR OTHER SIDING.—Under a bill of lading which provides that when goods are received for shipment on a private or other siding, they shall be at the owner's risk until attached to a train, the carrier's liability as a common carrier is not limited, but the bill of lading merely defines the time of delivery to the carrier, and is a valid contract.

3. CARRIERS—BILL OF LADING—TIME OF DELIVERY OF GOODS—LIABILITY OF CARRIER FOR LOSS.—Under a bill of lading providing that goods were at the owner's risk when received by a carrier for shipment on a private or other siding until the car is attached to a train, where the car had been loaded and sealed and the carrier notified thereof, *held*, the carrier has a reasonable time, after receipt of notice, in which to take charge of the property before it will be liable for damages thereto by fire sustained prior to the removal of the car.

4. CARRIERS—DAMAGE TO FREIGHT IN CAR ON SIDING.—A bill of lading, covering certain heading, which had been loaded on a car on a siding, provided that delivery was not complete until the car was attached to a train; the car was burned, before the carrier took charge of the car, by a fire breaking out in a neighboring yard. *Held*, it was a question for the jury whether the carrier was guilty of negligence in failing to move the car when notified.

---

*U. S. Compiled Statutes, §§ 8592-8604a.   Act approved March 4, 1915.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; reversed.

*E. L. Westbrook,* for appellant.

1. ·The provision in the bill of lading that when goods are received on private or other sidings, they shall be at the owner's risk until the car is attached to a train, is of no effect under the Cummins Amendment to Interstate Commerce Act. 38 U. S. Stat. at L., pp. 1196-7. This amendment does not prohibit contracts limiting the liability of the carrier for loss or injury to an amount not greater than that designated in the contract and it has had a far-reaching effect on the right of carriers to limit their liability on interstate shipments by special contract and the limitation pleaded is sustained in cases arising prior to the act but in none since. The cases in 163 N. Y. Supp. 111 and *Ib.* 114 sustain appellee's position, but even these and all others are decisions upon causes of action arising prior to the law, as it was when the shipment here was made, but there is not a case that sustains the ruling of the court below. The opposite view is maintained and the Cummins Act sustained in 252 Fed. 664; 93 S. E. 1048; 174 Pac. 607.

2. The loss of the car of heading was caused by appellee's negligence· in refusing to remove to a place of safety. Having a locomotive and a crew on the scene, it refused to so remove it after being requested to pull the car to a place of safety. 10 C. J. 130, sec. 161, *et seq.;* 23 Atl. 643; 93 S. W. 849; 26 Atl. 370; 46 N. W. 428; 4 R. C. L., sec. 491; 25 Pac. 702; 235 Fed. 856. The testimony shows negligence and it was error to direct a verdict for defendant.

*Fink & Dinning,* for appellee.

1. As to interstate shipments a common carrier may limit its common law liability by reasonable stipulations except as to loss or damage by its own negligence or that of its servants, and its power to so do is not abridged by the Carmack amendment as amended. 3 Wall. (U. S.) 107; 226 U. S. 491; 227 *Id.* 639; 223 *Id.* 97;

240 *Id.* 632; 241 *Id.* 319; 244 *Id.* 332; *So. Pac. Ry. Co. .v. Stewart,* advance sheets U. S. Sup. Ct., Feby: 15, 1919, p. 176.

2. The shipment being interstate, the rights and liabilities of the parties ''depend upon acts of Congress, the bill of lading and the common law rules as applied in Federal tribunals.'' 241 U. S. 319; 244 *Id.* 332.

3. A shipper and carrier may lawfully contract so as to postpone the time when the liability of the carrier as an insurer shall attach, and in such case for loss occurring after the bill of lading is issued, but before the time for the liability as insurer to begin, the carrier will not be responsible unless such loss is due to its negligence. 125 Fed. 273; 8 Ga. App. 677; 70 S. E. 174; 163 N. Y. Supp. 111-144; 122 N. E. 456; 95 Atl. 1002; L. R. A. 1916 C, 606.

4. The phrase, ''private or other siding,'' in section 5 of the bill of lading, includes and contemplates a side track of the kind involved in this case. 8 Ga. App. 677, 70 S. E. 174; 163 N. Y. Supp. 111-114; 122 N. E. 456; 95 Atl. 1002; L. R. A. 1916 C, 606.

5. At common law, as interpreted by the Federal courts, a common carrier may lawfully contract for exemption from liability except as against negligence. 3 Wall. (U. S.) 107; 194 U. S. 427; 194 *Id.* 432.

6. A stipulation in a bill of lading exempting the carrier from loss or damage will be limited to loss or damage not proximately due to its negligence. It is not necessary that the stipulation contain express words so limiting it, but they will be implied by the usual rules of judicial construction. 125 Fed. 273; 93 U. S. 174; 133 *Id.* 387; 168 *Id.* 104.

7. The delay, if any, in moving the car from the side track where loaded, even though resulting from defendant's negligence, was not the proximate but only the remote cause of the loss by fire and such delay does not render the carrier liable. 10 Wall. 176; 104 U. S. 427; 76 Miss. 855.

8. Extracts from the tariff and classifications of defendant, made public records by the filing thereof with the Interstate Commerce Commission under section 16 of the act to regulate commerce as amended, duly certified under seal, are receivable in evidence with like effect as the originals to prove rates, rules and regulations. 8 U. S. Comp. Stat. 1916, sec. 16 and sec. 8584 subsec. 12.

9. The provision of the bill of lading which fixes the time when liability of the carrier commences is a valid agreement. 10 C. J. 137. There is no reason why a shipper and carrier should not be permitted to agree as to the time when liability of the carrier begins. 86 Ark. 179; 93 *Id.* 537; 70 S. E. 154.

Receiving and delivering freight on spur track of private individuals is purely a matter of contract to which each party may attach any condition desired. 10 C. J. 251. A common carrier may limit or restrict its liability as an insurer by contract with the shipper where such limitation does not include exemption against negligence of the carrier or its servants and a reduced rate is a sufficient consideration to support the limitation. 3 Wall. 108; 194 U. S. 427; *Ib.* 432; 112 *Id.* 331. This right is not taken away by the Carmack amendment. 226 U. S. 491, approved in 227 *Id.* 639; 233 *Id.* 97, 508; 240 *Id.* 60; 241 *Id.* 319; 244 *Id.* 332; *So. Pac. Ry. Co.* v. *Stewart,* adv. sheets U. S. Sup. Ct. Rep. Feb. 15, 1919, p. 1766; 205 Mass. 254; 28 L. R. A. (N. S.) 293; 158 Pac. 591; 4 R. C. L., § 360. In this case we have a general stipulation that where the shipment is loaded on a "private or other siding" it shall remain at "owner's risk" until it is taken into the actual possession of the carrier. 125 Fed. (C. C. A). 273. See also 93 U. S. 174; 133 *Id.* 387; 168 *Id.* 104. The shipment had been delivered to the carrier and the contract signed, but under the terms of the contract the carrier's liability as insurer except as against negligence was postponed for a consideration until the car had been attached to a train. This provision is reasonable. 163 N. Y. Supp. 111; *Ib.* 114; 122 N. E. 456. The exemption

from liability for loss by fire is fair, reasonable and valid. 3 Wall. (U. S.) 107; 194 U. S. 427-432; 104 Atl. 144; 125 Fed. 273.

10. The appellee owed no duty to the appellant to protect the property from loss due to the negligence of the agent of appellant. 93 Ark. 537-546; 154 U. S. 155. The judgment below should be affirmed because (1) the stipulation in the bill of lading is a valid and binding agreement; (2) that appellee was under no legal obligation to protect the property from fire; (3) that the burden of proving negligence was on appellant and it failed; (4) the proximate cause of the injury was the act of some trespasser, for whose negligence appellee was not responsible.

### STATEMENT OF FACTS.

The Chickasaw Cooperage Company brought suit against the Yazoo & Mississippi Valley Railroad Company for the value of a car of heading which was burned on a sidetrack in the yards of the company connected with the railroad company's line of railway. In August, 1915, the Hudson & Dugger Company was operating a heading factory at Clarksdale, Mississippi, and it had in its yards a sidetrack or spur which connected with the main line of the defendant's railroad. A car of heading was loaded about 11 o'clock in the daytime and a bill of lading presented to the agent of the railroad company for his signature at 1:30 in the afternoon. The car had been placed there by the railroad to be loaded. The agent of the railroad company signed the bill of lading when it was presented to him and the car was sealed up and ready to be transported by the railroad company. The car of heading was consigned to the plaintiff, Chickasaw Cooperage Company. About 11 o'clock that night a kiln in the factory of Hudson & Dugger Company caught on fire and the flames extended to the car of heading and burned it up. The origin of the fire was unknown.

According to the testimony of the plaintiff, the railroad company had a switch engine there which was in part used in transferring cars from the sidetrack on the

factory yards of Hudson & Dugger Company to the main line of the railroad company. This engine was in use on the night of the fire, and the employees of the Hudson & Dugger Company asked the engineer to pull the car of heading to a place of safety, and the engineer in charge of the switch engine refused to do so. There was plenty of time for the engine to have been attached to the car of heading and to have drawn it to a place of safety before it caught on fire.

On the other hand, according to the testimony of the railroad company a piece of hose was stretched across the track and it was forbidden by the fire company to run its engine across the hose. The hose was placed across the track for the purpose of trying to prevent the fire from spreading to a lot of lumber which was there, and much more valuable than the car of heading. The shipment was an interstate one and the bill of lading on the back contained a clause as follows: "Property destined to or taken from a station, wharf or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or vessels, and when received from or delivered on private or other sidings, wharves or landings shall be owner's risk until the cars are attached to and after they are detached from trains."

At the conclusion of the testimony the court directed a verdict for the defendant and plaintiff has appealed.

HART, J., (after stating the facts). It is first earnestly insisted by counsel for the plaintiff that the provision in the bill of lading that when goods are received on private or other sidings they shall be at the owner's risk until the car is attached to a train, is of no effect under the Cummins amendment to the Interstate Commerce Act, which was approved March 4, 1915.

(1-2) We think counsel are mistaken in this contention. The only effect of the Cummins act was to prevent common carriers from limiting their liability as to the amount to be recovered when goods are lost or destroyed in transportation except

in certain instances where goods are hidden from view; and the amendment also makes it unlawful for any such common carrier to provide by contract for a shorter period of time for giving notice of claims than ninety days and for the filing of claims for a shorter period than four months; and for the institution of suits than two years. This is shown by the express language of the amendment, and we do not deem it necessary to set out the language of the Cummins amendment, for the language relied upon by counsel for the plaintiff to sustain their present contention is contained in the Interstate Commerce Act as it existed before the Cummins amendment was adopted. The clause of the bill of lading relied upon by the railroad company to exempt it from liability in the case at bar is that property when received on a private siding for shipment shall be at the owners' risk until the car or cars containing it are attached to a train. This contract does not undertake to limit the railroad company's liability as a common carrier, it merely defines the circumstances under which delivery for shipment and acceptance by the railroad company shall be understood as having taken place between the parties. The liability of the railroad company, under the Interstate Commerce Act, attaches as soon as the goods are delivered to the carrier for immediate shipment and are accepted by it. By the clause in question the parties undertook to agree when the delivery and acceptance were complete, and the meaning and intent of the clause in question was that the delivery for shipment and acceptance should be complete when the car was removed from the siding and attached to a train. This was a valid agreement under the principles of law decided in *St. Louis, I. M. & S. R. Co.* v. *Jones,* 93 Ark. 537. In that case the court held that under the Interstate Commerce Act carriers may stipulate with shippers of live stock that the latter shall assume all risks and expense of caring for the live stock until loaded in the cars. In that case the cattle had been placed in a pen of the railroad company at its station for immediate shipment, and a bill of lading had been executed by the railroad

company. There was a clause in the contract which provided that the shipper should assume all care and risk of the cattle while in the pen and that the railroad should not become liable for them until they were loaded on its train. The court held that the contract was a valid one. The contract of shipment did not provide that the cattle were to be transported within any specified time, but the court held that it was the duty of the railroad to transport the cattle with all convenient dispatch, with such suitable and sufficient means as it was required to provide in its business, that is to say, in a reasonable time.

(3) We think the principle there announced controls here. It is true that under the facts of the case at bar the car had been loaded and sealed up. The railroad company had been notified of that fact and had issued its bill of lading for the car of heading. The object of the agreement, however, was to give the railroad company a reasonable time after this to come and take charge of the property before it will be deemed to have accepted it for transportation and its liability as a common carrier commenced. This brings the case within the principles announced in *St. L., I. M. & S. R. Co.* v. *Jones, supra.* To the same effect see *Bainbridge Grocery Co.* v. *Atlantic Coast Line R. Co.* (Court of Appeals, Ga.), 70 S. E. 154; *Standard Combed Thread Co.* v. *Pennsylvania R. Co.* (N. J.), L. R. A. 1916 C, 608; *Siebert* v. *Erie R. R.,* 163 N. Y. S. 111, and *Bers* v. *Erie R. Co.,* 163 N. Y. S. 114.

(4) It is next contended by counsel for the plaintiff that the railroad company was guilty of negligence in refusing to remove the car to a place of safety during the fire, and that on this account the judgment should be reversed. In this contention we think counsel are correct. The testimony for the plaintiff shows that the car had been loaded and sealed up; that it was on a siding connected with the railroad company's main track; that it had notified the railroad company that the car was ready for movement and that it had issued a bill of lading therefor. The car was there waiting a reasonable time for the railroad company to place it in a train. Under these

circumstances the car was under the control of the railroad company and it was not a volunteer when it was requested to remove the car to a place of safety during the fire and refused to do so. It had a switch engine at the scene of the fire with steam up manned by a crew.

According to the testimony of the plaintiff the railroad company had ample time to have removed the car to a place of safety after the crew was requested to do so and before the hose was stretched across the track. This testimony, if true, under the circumstances, constituted negligence on the part of the railroad company, and the court erred in not submitting that question to the jury.

For that error the judgment will be reversed and the cause remanded for a new trial.